IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JANE F. ARROCHA,                    )
                                    )
                Plaintiff,          )
                                    )   CIVIL ACTION
v.                                  )
                                    )   No. 07-2564-JWL-JTR
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
                Defendant.          )
_____)

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423(hereinafter the Act).  Finding no reversible error, the court recommends the Commissioner's decision be AFFIRMED.

I.   Background

After proceedings before the state disability determination service and a hearing before an Administrative Law Judge (ALJ), plaintiff's application was ultimately denied in a decision issued Aug. 16, 2006.  (R. 16-28).  The ALJ found that plaintiff was insured through the date of the decision and had not engaged in substantial gainful activity after June 6, 2002, the alleged

onset date of her disability.  (R. 18).  He found that plaintiff
has a "severe" combination of impairments (consisting of a
seizure disorder, degenerative disc disease, status-post
hemilaminectomy, foraminectomy, and surgical removal of a bone
spur, hypertension, hyperlipidemia, a history of colon polyps,
and "a narcissistic personality vs. an adjustment disorder with
an anxious mood"), but that this combination of impairments does
not meet or medically equal one of the impairments listed in 20
C.F.R. Part 404, Subpart P, Appendix 1.  (R. 19).

The ALJ summarized and discussed the medical evidence in the
record, considered the credibility of plaintiff's allegations of
limitations resulting from her symptoms, considered the medical
opinions contained in the record, and assessed plaintiff's
residual functional capacity (RFC).  (R. 20-27).  The ALJ found
plaintiff's allegations of limitations only partially credible,
gave "great weight to the objective and clinical findings and
diagnostic assessments set forth in the contemporaneous treatment
notes," and gave significant weight to the assessments and
medical opinions of Dr. Stockwell, the medical consultant who
assessed the medical evidence at the initial and reconsideration
review of plaintiff's application.  (R. 26-27).  He specifically
noted that he gave Dr. Stockwell's reconsideration assessment
greater weight than the initial assessment, but that in according
partial credibility to plaintiff's allegations, he had assessed

greater limitations on plaintiff's capabilities than had Dr. Stockwell even in the reconsideration assessment.  (R. 27).

Based upon the RFC assessed and the testimony of the vocational expert, the ALJ found that plaintiff is able to perform her past relevant work as a procurement clerk as that job is generally performed in the economy.  Id.  Therefore, he determined that plaintiff is not disabled within the meaning of the Act, and denied her application.  (R. 28).

Plaintiff disagreed with the ALJ's decision and sought review by the Appeals Council.  (R. 12).  For the Appeals Council's review, plaintiff submitted two letters detailing her arguments regarding the ALJ's decision, along with thirty-seven pages of additional medical records.  (R. 272-313).  The Appeals Council issued an order making plaintiff's arguments and the additional medical evidence a part of the administrative record, but denied plaintiff's request for review.  (R. 5-9).  The Council stated that it had considered the additional evidence, but found no reason to review the decision.  (R. 5).  Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 5); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  Section 405(g) provides, "The findings of the

-3-

Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if she can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to last for at least twelve months or to result in

death.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC before continuing.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past

-5-

relevant work, and whether she is able to perform other work in the national economy.  _Williams_, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  _Dikeman v. Halter_, 245 F.3d 1182, 1184 (10th Cir. 2001); _Williams_, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity.  _Id._; _Haddock v. Apfel_, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred:  in his step three evaluation, in posing an inadequate hypothetical question, and in finding that plaintiff's allegations of limitations resulting from her impairments are only partially credible.  The Commissioner argues that the credibility determination was proper and is supported by substantial evidence in the record, that the step three evaluation was correct, and that the hypothetical question was properly based only on those limitations supported by the record.  Because the credibility determination in this case factored into the ALJ's step three evaluation, and because plaintiff claims error in the facts found at step three which affected the credibility determination, the court begins with consideration of the ALJ's credibility determination.

## III. The ALJ's Credibility Determination

The Tenth Circuit has explained the analysis for considering the credibility of subjective testimony regarding symptoms.

Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with symptoms of pain).

> A claimant's subjective allegation of pain is not
> sufficient in itself to establish disability.  Gatson
> v. Bowen, 838 F.2d 442, 447 (10th Cir. 1988).  Before
> the ALJ need even consider any subjective evidence of
> pain, the claimant must first prove by objective
> medical evidence the existence of a pain-producing
> impairment, Luna v. Bowen, 834 F.2d 161, 163 (10th Cir.
> 1987) (citing Frey [v. Bowen], 816 F.2d [508,] 515
> [(10th Cir. 1987)]; Nieto v. Heckler, 750 F.2d 59 (10th
> Cir. 1984)), that could reasonably be expected to
> produce the alleged disabling pain.  Luna, 834 F.2d at
> 163; 42 U.S.C. § 423(d)(5)(A).  This court has stated:
> The framework for the proper analysis of Claimant's
> evidence of pain is set out in Luna v. Bowen, 834 F.2d
> 161 (10th Cir. 1987).  We must consider (1) whether
> Claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether there is
> a "loose nexus" between the proven impairment and the
> Claimant's subjective allegations of pain; and (3) if
> so, whether, considering all the evidence, both
> objective and subjective, Claimant's pain is in fact
> disabling.  Musgrave v. Sullivan, 966 F.2d 1371, 1375-
> 76 (10th Cir. 1992) (citing Luna, 834 F.2d at 163-64).

Thompson, 987 F.2d at 1488.

In evaluating symptoms, the court has recognized a non-

exhaustive list of factors which should be considered.  Luna, 834

F.2d at 165-66; compare, 20 C.F.R. § 404.1529(c)(3).  These

factors include:

> the levels of medication and their effectiveness, the
> extensiveness of the attempts (medical or nonmedical)
> to obtain relief, the frequency of medical contacts,
> the nature of daily activities, subjective measures of
> credibility that are peculiarly within the judgment of
> the ALJ, the motivation of and relationship between the
> claimant and other witnesses, and the consistency or
> compatibility of nonmedical testimony with objective
> medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489.

The regulations also contain a list of relevant factors to be considered in evaluating credibility which list overlaps and expands the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

Moreover, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's credibility determination.  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by
substantial evidence." Cruse v. Bowen, 867 F.2d 1183, 1184 (8th
Cir. 1989) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S.
607, 620 (1966)).  Nonetheless, "[f]indings as to credibility
should be closely and affirmatively linked to substantial
evidence and not just a conclusion in the guise of findings."
Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).
Therefore, where the ALJ has reached a reasonable conclusion that
is supported by substantial evidence in the record, the court
will not reweigh the evidence and reject that conclusion even if
it might have drawn a contrary conclusion in the first instance.

**A.    The ALJ's Findings and the Parties' Arguments**

The ALJ found plaintiff's allegations regarding her symptoms
only partially credible and noted eight reasons to support
discounting those allegations.  (R. 25-26).  They are:
(1) Physical examinations reveal very good physical functioning
which is inconsistent with plaintiff's allegations of limiting
pain, hand tremors, and limping gait.  (R. 25).  (2) Plaintiff's
allegations regarding her seizures are "widely inconsistent" with
most contemporaneous reports to medical personnel.  Id.
(3) Plaintiff tolerated anti-seizure medications well, "without
significantly limiting adverse side effects."  Id.
(4) Plaintiff's allegations of memory deficits are inconsistent
with the results of psychometric testing.  Id.  (5) Plaintiff

-9-

sustained semi-skilled employment for over twenty-five years despite a long concurrent seizure history.  Id. (6) Plaintiff's allegation that she quit working due to seizures is inconsistent with her reports to physicians that she had retired.  Id. (7) Plaintiff acknowledged significant daily activities and performing a wide range of household chores despite her impairments. (R. 25-26).  And, (8) Plaintiff did not commence more aggressive treatment for her seizures until Aug. 2003, more than one year after her alleged onset date.  (R. 26).

Plaintiff claims the ALJ's credibility findings are not supported by the evidence, that the ALJ abstracted evidence favorable to his credibility finding and ignored contrary evidence, that the ALJ did not closely and affirmatively link his credibility findings with substantial evidence in the record, and that the ALJ did not consider the regulatory credibility factors. (Pl. Br. 20-25); (Reply 6).  The Commissioner argues that the ALJ provided a detailed credibility analysis in which he articulated numerous bases for finding plaintiff's allegations not entirely credible, and that substantial evidence in the record supports those finding. (Comm'r Br. 8-14).

### B.   Analysis

The court notes that the ALJ's summarization of the evidence of record is unusually detailed and extensive.  (R. 19-27).  In fact, plaintiff herself provides a rather lengthy summary of the

ALJ's treatment of the evidence.  (Pl. Br. 21-22).  She then claims that the ALJ's summary is not supported by substantial evidence in the record.  However, the court finds that the ALJ's decision contains a fair summary of the record evidence. Plaintiff makes several specific arguments, but, as the court discusses below, none of the arguments justifies a finding of error in the ALJ's decision.

Plaintiff argues that although the ALJ noted Dr. Weinstein's treatment records contain a reference that plaintiff had retired, "there were no other entries in the record indicating Plaintiff had retired." (Pl. Br. 22).  Plaintiff's assertion is erroneous. As the ALJ noted in the decision, plaintiff reported to both Dr. Thomsen (primary care physician), and Dr. Weinstein (neurologist) that she had retired.  (R. 18, 19), see also, (R. 166(Dr. Thomsen, 6/24/02), 206(Dr. Weinstein, 8/25/02)).  The records presented for the first time to the Appeals Council also contain a notation by Dr. Ryan, another of plaintiff's neurologists, that plaintiff was retired.  (R. 288)(12/6/02).  Moreover, even had there been but a single report that plaintiff was retired, that report is evidence relevant to the ALJ's credibility determination and is inconsistent with plaintiff's assertion that she quit work due to seizures.

Plaintiff argues that since the ALJ conceded plaintiff's earnings record showed no earnings after her alleged onset date

(June 6, 2002), it was error for him to rely on evidence that
plaintiff told two other physicians she had worked into 2004.
Plaintiff's argument misses the significance of both the step one
determination and the credibility determination.

If the ALJ finds at step one that the claimant is performing
substantial gainful activity, he must find that she is not
disabled.  20 C.F.R. § 404.1520(a)(4)(i).  As the ALJ explained,
the regulations provide for a presumption of substantial gainful
activity if a claimant has earnings from employment which are
above certain levels.  (R. 17)(citing 20 C.F.R. §§ 404.1574,
404.1575).  Therefore, at step one of the evaluation process, the
ALJ considered whether plaintiff was engaged in substantial
gainful activity.  (R. 18-19).

In his step one analysis, the ALJ considered and discussed
evidence that plaintiff had stated to certain doctors that she
had retired, and that plaintiff later told other doctors that she
had worked into 2004.  (R. 18-19).  He also noted that
plaintiff's earnings record with the Social Security
Administration revealed "no <u>reported</u> earnings whatsoever
subsequent to 2002."  (R. 19) (emphasis added).  Therefore, the
ALJ was unable to find evidence in the record which would
establish that plaintiff had worked at the level of substantial
gainful activity into 2004.  (R. 19).  The ALJ concluded, "absent
any other substantial evidence to the contrary, the

-12-

Administrative Law Judge finds [plaintiff] has not engaged in substantial gainful activity at any time subsequent to the alleged onset date of disability." (R. 19). The ALJ did not "concede" at step one that plaintiff "had not worked past her alleged onset date," as plaintiff argues. (Pl. Br. 22) Rather, he found that the record contained no substantial evidence that plaintiff had worked <u>at the level of substantial gainful activity</u> after her alleged onset date.

Additionally, evidence that plaintiff told doctors she worked into 2004 is evidence which is contrary to plaintiff's assertion that she quit work in June 2002 because of her impairments. It is evidence tending to show that plaintiff's allegations are not credible, and may properly be relied upon by the ALJ in discounting plaintiff's allegations.

Plaintiff claims the ALJ erroneously mischaracterized Dr. Weinstein's Mar. 2004 office note (stating that plaintiff had two to three seizures in a three-month period, although the doctor stated plaintiff had two to three seizures <u>a month</u> in a three month period). (Pl. Br. 11-12, 22). As plaintiff argues, in his office note dated Mar. 23, 2004, Dr. Weinstein stated, "In the last three months, Jane has continued to have brief complex partial seizures, which occur two or three times a month." (R. 195)(cited at (Pl. Br. 22)). Discussing that treatment note, the

-13-

ALJ stated, "In March, 2004, she endorsed only 2-3 episodes of only brief duration during the prior 3-month period." (R. 20).

Although at first blush the decision appears to misstate the treatment note, in context the decision need not be interpreted that way. In his analysis, the ALJ stated that the evidence does not establish that plaintiff's seizures meet the frequency criterion of Listing 11.03, "episodes occurring more than once per week despite at least 3 months of prescribed treatment." (R. 20). Thereafter he summarized the evidence regarding frequency. He noted Dr. Weinstein's treatment records from Aug. 2003, that plaintiff had an average of one to two seizures per month. (R. 20). He noted plaintiff's Oct. 2003 report that she had not had any seizures since beginning to take Topamax in Sept. 2003. Id. He noted plaintiff's Dec. 2003 report that she had three or four seizures while visiting family in Florida in Nov. 2003, but that she had no seizures in the few weeks thereafter. Id. He noted plaintiff's report in Sept. 2004 that she had two seizures per month and sometimes remained seizure free for periods of up to thirty days. (R. 20-21). He noted that in Jan. 2005 plaintiff reported seizures "at about the same frequency or 2-4 times per month, but also that she continued to experience periods of several weeks duration wherein she was completely seizure free." (R. 21). It was in the midst of this summary, that the ALJ stated, "In March, 2004, she endorsed only 2-3 episodes of only

-14-

brief duration during the prior 3-month period." (R. 20) (emphasis added). Plaintiff interprets this statement to the effect that the ALJ believed plaintiff had only two to three seizures in the entire prior three-month period although Dr. Weinstein said she had two to three seizures per month in the prior three-month period.

In context, however, the ALJ had been summarizing the evidence of seizure frequency, and had been stating the frequency with regard to the number of episodes per month. Thus, the statement at issue may fairly be read to the effect that plaintiff reported that in the prior three-month period she had only two to three brief episodes per month. This interpretation is further supported by the fact that the ALJ cited to Dr. Weinstein's Mar. 2004 treatment note extensively ("In March 2004, she endorsed only 2-3 episodes of only brief duration during the prior 3-month period that were only 'minimally disruptive' to her. At that encounter, she denied any cognitive deficits whatsoever or adverse medication side effects and her husband reported he felt the intensity and duration of her seizures had diminished and that she experienced only 'brief' post-ictal symptoms."), which reveals a particular familiarity with that treatment note. (R. 20); compare, (R. 105). Because the court's review of the ALJ's credibility determination is deferential, because the decision can be read in this manner to properly

reflect the evidence cited by the ALJ, and because such a reading eliminates any potential error or ambiguity, the court finds that this is the understanding to be given the ALJ's statement.  This alleged micharacterization provides no support for plaintiff's credibility argument.

Plaintiff claims error in the credibility determination because "the ALJ cited no specific inconsistencies in the record to support" his conclusion that "the treatment notes of Dr. Weinstein and those concurrent with the June 2005 EEG testing varied widely from the statement of Plaintiff and her witnesses." (Pl. Br. 22).  Plaintiff's argument is not entirely clear and appears to misunderstand the decision.

To the extent plaintiff refers to the ALJ's determination that plaintiff's allegations were "widely inconsistent" with her reports to Dr. Weinstein, the ALJ discussed plaintiff's <u>January</u> and <u>February</u>, 2005 visits with Dr. Weinstein and noted:

> In January 2005, claimant advised Dr. Weinstein she had continued to experience episodes at about the same frequency or 2-4 times per month, but also that she continued to experience periods several weeks duration wherein she was completely seizure free.  Also at that visit, claimant reported her husband had been keeping a calendar of her seizures; <u>however, the frequency, duration, and sequela of episodes endorsed to Dr. Weinstein during the nearly 17-month period prior thereto are widely inconsistent with the extreme degrees of frequency and sequela she endorsed in various disability and seizure questionnaires submitted in conjunction with the initial and reconsideration adjudications of her application for disability benefits, as well as that alleged by her and her witnesses at the hearing.</u>  In February 2005 she advised

-16-

her physician she had experienced a recent series of
episodes spanning 3 consecutive days and contended that
had been her usual pattern during the past several
months, but <u>such is not consistent with her repeated
descriptions of episodes to treating neurologists
during the nearly 18-month period prior thereto</u>.

(R. 21)(emphases added).

Plaintiff does not cite to specific evidence in the record
for her reference to treatment notes concurrent with the "June
2005" EEG testing.  However, separate from his discussion of Dr.
Weinstein's treatment notes, the ALJ noted:

Electrodiagnostic testing performed in July 2005
revealed claimant experienced 2 separate episodes of
complex partial seizure activity in the right temporal
lobe during testing, but the other treatment notes
concurrent with that study do not reflect the extreme
degrees of post-ictal sequela claimant and her
witnesses alleged.

(R. 21).  Dr. dePadua's report of a visit on Aug 2, 2005 reveals
plaintiff had two seizures while in the epilepsy monitoring unit
between July 11 and July 15, 2005, as the ALJ noted.  (R. 236).
But, as the ALJ stated, that report does not reflect the extreme
postictal sequela alleged by plaintiff and her witnesses.  (R.
236-37).

The court notes that later in the decision, in summarizing
his reasons for discounting the credibility of plaintiff's
allegations, the ALJ also stated,

The extreme degrees of frequency, duration, and post-
ictal sequela claimant and her witnesses alleged at the
hearing or in disability questionnaires of record are
widely inconsistent with claimant's repeated reports to
treating neurologists that she experiences episodes of

-17-

only brief duration resulting in only brief post-ictal
sequela that are only "minimally disruptive" to her and
that she experiences frequent periods of several-weeks
duration wherein she is entirely seizure free.

(R. 25).

The court finds these are specific inconsistencies cited by
the ALJ that the court may review and may determine whether
substantial evidence in the record as a whole supports the ALJ's
analysis.  In fact, substantial evidence in the record supports
the ALJ's findings as quoted above.  For approximately eighteen
months before Feb. 2005, plaintiff reported to her physicians
that she experiences brief seizures with brief post-ictal
symptoms that are not greatly disruptive to her and she reported
that she often experiences periods of several-weeks in which she
is seizure free.  Moreover, although plaintiff subsequently began
reporting clusters of multiple seizures with extreme postictal
sequela to Dr. dePadua, she did not specifically do so until
after her Aug. 2 visit as noted by the ALJ.  See also, (R. 238-
39)(May 4, 2005 treatment report of Dr. dePadua describing
typical seizure; lasts thirty seconds, remains confused for a
minute thereafter, develops a severe generalized headache).

Plaintiff argues that when viewed in light of the "seizure
log"[1] prepared by plaintiff's husband, Dr. Burd's statement in

---

[1]The "seizure log" to which plaintiff refers is in the
record at Exhibit 14E, and is entitled in the "List of Exhibits"
as a "Seizure Questionnaire."  (R. 2, 147-49).

Nov. 2005 that plaintiff reported being seizure free for six months is an obvious misstatement and the doctor "should have reported" that plaintiff had not experienced any seizures for six weeks. Thus, plaintiff implies without stating that she told Dr. Burd she had been seizure free only for six weeks, and that the ALJ erred in relying on Dr. Burd's contrary report in discounting plaintiff's credibility. However, in the "History of Present Illness" section of his report, and as the ALJ noted in the decision, Dr. Burd stated, "She reports over the past six months, the only time she's had a seizure was in October." (R. 252); see also, (R. 22)(citing Ex. 11F). Plaintiff's argument merely asks the court to re-weigh the report and determine that it should be discounted based upon the "seizure log." That is something the court may not do. The ALJ preferred Dr. Burd's report over the "seizure log," and substantial evidence in the record supports that determination. Moreover, tellingly missing from plaintiff's argument is an assertion that plaintiff in fact told Dr. Burd that she had been seizure free for only six weeks. The record reveals an inconsistency, and the ALJ properly relied upon this inconsistency in discounting plaintiff's allegations.

In related arguments, plaintiff asserts that "the ALJ did not discredit" the "seizure log" maintained by her husband (Pl. Br. 23-24), and that the "ALJ did not address said log in his decision thereby implying that he was not questioning" its

accuracy.  (Pl. Br. 12).  The court disagrees with plaintiff as
to both counts.  The "seizure log" to which plaintiff refers is
Exhibit 14E in the record (R. 147-49), and is listed in the "List
of Exhibits" as a "Seizure Questionnaire."  (R. 2).  The record
contains one other exhibit which is referred to as a "Seizure
Questionnaire," which also includes a "seizure log" for 2004.
(R. 2, 86-89)(Ex. 4E).  In the decision, the ALJ noted that
plaintiff provided documentary evidence reflecting periods:  of
several weeks where plaintiff is seizure free; of 1-2 seizures
per month, of 2-4 seizures per month; or "up to episodes ranging
in the teens per month and 66 total during 2005."  (R. 20).  The
"seizure log" is the only place in the record where the court was
able to find documentary evidence of 66 seizures in 2005.  (R.
149).  This fact is a clear indication that the ALJ considered
and addressed the "seizure log" despite plaintiff's contrary
argument.  Moreover, as quoted above at pages 16 through 18, the
ALJ found that plaintiff's reports to the physicians(including
reports to Dr. dePadua before Sept., 2005) were "widely
inconsistent" with plaintiff's reports in the "disability and
seizure questionnaires" (R. 21), with plaintiff's "disability
questionnaires," and with the testimony of plaintiff and her
witnesses at the hearing.  (R. 25).  A fair reading of the
decision reveals that although the ALJ did not use plaintiff's
term, "seizure log," he discredited the "disability and seizure

-20-

questionnaires," which included the "seizure logs," to the same extent and for the same reasons he discounted the credibility of plaintiff's allegations.

Plaintiff accepts the ALJ's finding that despite her impairments she was able to perform "a very wide range of household chores and other activities of daily living during the period at issue." (R. 25-26); (Pl. Br. 23). But, she argues that "it was to Plaintiff's credit that she was forthright in stating that she was capable of performing household chores when she was not having seizures," and implies that the ALJ should, therefore, not have used this fact against her in his credibility determination. (Pl. Br. 23). While it is true that plaintiff's acknowledgment of certain abilities is to her credit in a credibility determination, that same acknowledgment is inconsistent with her allegations of severe disabling symptoms including debilitating pain, hand tremors, and limping gait. It is for the ALJ to make a credibility determination, and where that determination is supported by substantial evidence in the record, the court may not find error even if it would have found differently in the first instance.

Plaintiff argues that "the ALJ was apparently unaware that she was being treated by Dr. Ryan" for seizures before 2003. (Pl. Br. 23). She thereby implies that the ALJ believed she first began treatment by a specialist when she first saw Dr.

Weinstein in Aug. 2003.  The record does not bear out plaintiff's premise.  In the decision, the ALJ summarized the medical records of Dr. Thomsen from Jun. 24, 2002 through Jun. 9, 2003.  (R. 20)(citing Ex. 4F/pp.3-5(R. 164-66)).  He specifically noted that plaintiff was to "undergo a routine laboratory test to assess the blood serum level of her prescribed seizure medication (Tegretol at that time)."  (R. 20).  He noted the record reveals that in June, 2003 plaintiff informed Dr. Thomsen that she was considering seeing "other neurologists."  (R. 20).  Although the ALJ did not include it in his summary, Dr. Thomsen's records also reveal that a copy of the "Tegretol level" was to be sent to Dr. Ryan (R. 165), and the June 2003 records referred to by the ALJ discuss plaintiff's desire to see another neurologist:

> She has seen Dr. Ryan.  The patient has a history of
> seizure disorder secondary to closed-head injury.  The
> patient wants to see another neurologist and may end up
> seeing Dr. Arkin or Dr. Zwibelman.  The note from Dr.
> Ryan is from 12/16/02.  The patient is due for a
> Tegretol level, and she got that today with her lipid
> profile.

(R. 164).  Although the ALJ did not specifically state that plaintiff had been seeing Dr. Ryan as her neurologist before June 2003, he clearly demonstrated that he had reviewed Dr. Thomsen's records which reveal that fact.

The ALJ noted that plaintiff's initial consultation with Dr. Weinstein was Aug. 2003 (R. 20), and in stating his reasons for discounting the credibility of plaintiff's allegations, he

stated, "The medical records indicate that she did not commence more aggressive treatment for seizures until August 2003, more than 1 year subsequent to the alleged onset date of disability." (R. 26)(emphasis added).   Thus, the record demonstrates that the ALJ knew plaintiff was being treated by a neurologist for seizures before Aug. 2003, but that she began more aggressive treatment in Aug. 2003 when she began to see Dr. Weinstein.

In the final three pages of her credibility argument, plaintiff claims the "treatment notes of Drs. Thomsen, Weinstein, and dePadua all supported Plaintiff's allegations as to her seizure disorder," and that the record evidence if properly considered would lead to a determination that plaintiff's allegations are credible.   These arguments point to evidence in the record which might be used to find plaintiff's allegations credible, and ask the court to reweigh the evidence and determine plaintiff's allegations are credible.   While some of the record evidence supports plaintiff's allegations, and while portions of the doctors' treatment notes might be interpreted to support plaintiff's allegations, the court may not reweigh the evidence. As discussed above, substantial evidence in the record as a whole supports the ALJ's credibility determination, and that determination must be affirmed.

For the first time in her reply brief, plaintiff points to additional facts in the record which the ALJ did not specifically

mention in his decision, argues that the ALJ ignored this
significant evidence in the record supporting plaintiff's
allegations, and claims that this demonstrates the "credibility
determination was not supported by substantial evidence and was
'beyond meaningful judicial review.'" (Reply 6-7)(quoting Drapeau
v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).  According
to plaintiff, the facts ignored by the ALJ are (1) that plaintiff
has fallen four times as a result of seizures, (2) that the ALJ
failed to consider the "seizure log," (3) that plaintiff reports
the seizures appear to be caused by stress and sleep deprivation,
(4) that plaintiff had to stop driving in 2000 after a seizure
related automobile accident, and (5) that plaintiff underwent
brain surgery in an attempt to stop the seizures after all other
treatment failed.

        As discussed above, the ALJ in fact discussed and considered
the "seizure log."  Further, the ALJ accepted and stated
plaintiff's "inability to drive a motor vehicle" (R. 22), and
included in his RFC assessment that plaintiff is precluded from
climbing ladders and scaffolding, or from exposure to hazardous
machinery or unprotected heights, thus implying that the ALJ had
also considered evidence of falls.  (R. 24).

        Moreover, an ALJ is not required to discuss every piece of
evidence.  He must discuss evidence supporting his decision,
uncontroverted evidence he chooses not to rely upon, and

significantly probative evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).   But, he may not selectively abstract evidence in support of his decision and ignore evidence supportive of plaintiff's allegations.  Owen v. Chater, 913 F. Supp 1413, 1420 (D. Kan. 1995).

As discussed herein, the court does not find that the ALJ selectively abstracted evidence in support of his decision or ignored evidence supportive of plaintiff's allegations.  With regard to the evidence which the ALJ did not in fact discuss, plaintiff has not shown that evidence constitutes either uncontroverted or significantly probative evidence in light of the facts as discussed by the ALJ.

With regard to plaintiff's allegations that the ALJ did not consider the regulatory factors and did not closely and affirmatively link his credibility findings to substantial evidence in the record, those allegations are frivolous in light of the court's discussion herein.  The court does not require a factor-by-factor credibility analysis:  the ALJ need only consider the relevant factors and explain how the evidence leads to and supports his credibility finding.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  As the court's discussion indicates, that is what the ALJ did here.  Moreover, the discussion above demonstrates that the ALJ's credibility findings are affirmatively linked to substantial evidence in the record.

**IV.  Step Three Evaluation**

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); <u>see also</u>, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  <u>Williams</u>, 844 F.2d at 751; <u>see</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet <u>all</u> of the specified medical criteria' contained in a particular listing."  <u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in <u>Zebley</u>)).

<u>Medical equivalence</u> to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a) (2007).  Where a claimant has a severe combination of impairments, which does not <u>meet</u> the severity of a listed impairment, the Commissioner will find that combination of impairments <u>medically equivalent</u> to a Listing, "[i]f the findings related to [claimant's] impairment(s) are at least of equal

medical significance to those of a listed impairment." Id.
§ 404.1526(b)(3).  The determination of medical equivalence is
made without consideration of the vocational factors of age,
education, or work experience.  20 C.F.R. § 404.1526(c).

"The [Commissioner] explicitly has set the medical criteria
defining the listed impairments at a higher level of severity
than the statutory standard.  The listings define impairments
that would prevent an adult, regardless of his age, education, or
work experience, from performing any gainful activity, not just
'substantial gainful activity.'"  Sullivan v. Zebley, 493 U.S.
521, 532-33 (1990) (emphasis in original) (citing 20 C.F.R.
§ 416.925(a) (1989)).  The listings "streamlin[e] the decision
process by identifying those claimants whose medical impairments
are so severe that it is likely they would be found disabled
regardless of their vocational background."  Yuckert, 482 U.S. at
153.  "Because the Listings, if met, operate to cut off further
detailed inquiry, they should not be read expansively."  Caviness
v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

The criteria of Listing 11.03 require (A) a diagnosis of
nonconvulsive epilepsy (1) documented by a detailed
description of a typical seizure pattern, (2) occurring more
frequently than once weekly, (3) in spite of at least three
months of prescribed treatment, with (B)(1)(a) alteration of
awareness or (b) loss of consciousness and (2)(a) transient

-27-

postictal manifestations of unconventional behavior or
(b) significant interference with activity during the day.   20
C.F.R., Pt. 404, Subpt. P, App. 1 § 11.03.

### A.   The ALJ's Findings and the Parties' Arguments

The ALJ's step three analysis occupied over four and one-
half pages of his decision.  (R. 19-24).  It was in this section
of his decision that the ALJ discussed most:  of the medical
treatment notes; of plaintiff's reports to the treating and
examining doctors (as discussed above in the court's credibility
analysis); and of plaintiff's allegations regarding the
limitations resulting from her symptoms.  More than three pages
of this section specifically deals with consideration of whether
plaintiff's impairments meet or equal the severity of Listing
11.03.  (R. 19-22).

The ALJ concluded his analysis of Listing 11.03:

> Upon a longitudinal review of the entire evidentiary
> record, the Administrative Law Judge finds the medical
> evidence does not establish claimant's seizure episodes
> occur more frequently than once weekly. . . .  With
> particular deference to contemporaneous treatment notes
> from primary treating physicians and the medical
> opinions provided by the state agency medical
> consultant, the Administrative Law Judge finds
> claimant's seizure disorder does not meet the specific
> severity requirements set forth in Sections 11.02[2] or
> 11.03.

---

[2]Plaintiff makes no argument before this court that her
impairments meet or equal the severity of Listing 11.02, and the
court has not considered that Listing.

(R. 22).  The ALJ found that plaintiff's impairments do not meet
or medically equal any of the Listed impairments.  (R. 19).

Plaintiff claims error both in finding that plaintiff's
impairments do not <u>meet</u> the criteria of Listing 11.03, and,
alternatively, in finding that her impairments do not <u>equal</u> the
criteria of the Listing.  Plaintiff also argues the ALJ erred in
failing to secure medical expert testimony whether plaintiff's
impairments meet or equal the Listing.  The Commissioner argues
that substantial evidence in the record as a whole supports the
ALJ's determination that the severity of plaintiff's impairments
does not meet or equal Listing 11.03.

### B.   <u>The Finding Plaintiff Does not Meet Listing 11.03</u>

As quoted above, the ALJ found that plaintiff's condition
does not meet the severity of Listing 11.03 because plaintiff has
not shown that her seizures occur <u>more frequently than once
weekly</u> as required by the Listing.  (R. 22).  Plaintiff argues
that her condition meets the frequency requirement based upon two
arguments.  First, plaintiff argues that the ALJ acknowledged
reports of up to four seizures in a month, and specifically
discussed plaintiff's Sept. 2005 report to Dr. dePadua that she
experienced two to four seizures a day and a total of fourteen
seizures in five days in late August 2005.  (Pl. Br. 11-
12)(citing (R. 20-21)).  Second, she argues that the "seizure
log" demonstrated "a minimum of 16 instances were [sic] Plaintiff

-29-

suffered more than 2 seizures in a single day." (Pl. Br. 12)(citing (R. 147-49)).

Even though the ALJ accepted that there are instances where plaintiff has up to four seizures a month, that does not constitute a finding that the frequency requirement is met because the Listing requires that seizures occur more frequently than once weekly. Similarly, although the ALJ discussed plaintiff's report to Dr. dePadua in Sept. 2005, that discussion does not constitute an acceptance of plaintiff's report. In fact, in the same paragraph the ALJ noted plaintiff's report to Dr. Burd in Nov. 2005 that she had not had any seizures in the past six months except for a seizure in Oct. 2005. (R. 22)(discussed above). As discussed above, the ALJ discounted the credibility of plaintiff's allegations, and that finding is supported by substantial evidence in the record. A fair reading of the decision reveals the ALJ discounted plaintiff's subsequent reports to Drs. dePadua and Camarata, along with her disability and seizure questionnaires, and her testimony and that of her witnesses at the hearing because those reports and testimony were widely inconsistent with her reports to Dr. Weinstein over a long period and were inconsistent with her reports to the examining physicians Drs. Pickett and Burd in Mar. and Nov. 2005. The court's review of the record reveals that substantial evidence in the record as a whole supports this finding.

Plaintiff's reliance upon the "seizure log" is no more fruitful.  As discussed in evaluating the ALJ's credibility determination at pp. 18-21 above, the ALJ considered the "seizure log" and discounted it to the same extent and for the same reasons he discounted the credibility of plaintiff's allegations. That determination is supported by substantial evidence in the record.  Therefore, plaintiff's argument that her condition meets the severity of Listing 11.03 is left without any <u>credible</u> or creditable support in the record evidence.

Finally, plaintiff argues that she presented a letter dated Aug. 22, 2006 to the Appeals Council in which Dr. dePadua stated that she had recently become aware of the fact that plaintiff had 165 seizures over eighteen months in 2005 and 2006, but that Dr. dePadua had not previously realized that plaintiff would often have three or four seizures in a given day.  (Pl. Br. 13)(citing (R. 283-85)).  In the letter cited, Dr. dePadua noted that "One of the patient's main concerns on her visit today is that she was denied her application for disability."  (R. 284)(Dr. dePadua's letter is dated Aug. 22, 2006, the hearing decision is dated Aug. 15, 2006).  The doctor stated, "The patient brought with her to her visit today her seizure diary[3] for the past year.  On previous visits, she had been telling us that she there [sic]

---

[3]The court assumes that this is the document referred to as a "seizure log" in plaintiff's briefs and in this opinion.

would be an average of three days out of every month that she
would have seizures, but did not make it clear that on the days
she did have seizures, she would often have three or four of
them." (R. 284).

In denying plaintiff's request for review, the Appeals
Council stated it had considered this additional evidence, but
found that it does not provide a basis for changing the
Administrative Law Judge's decision. (R. 5-6). The court
agrees. It is clear from Dr. dePadua's letter that her new
understanding regarding the frequency of plaintiff's seizures is
based on plaintiff and her husband's report. However, the court
found that the ALJ properly discounted these reports. The fact
that Dr. dePadua now professes a clearer understanding of the
frequency of plaintiff's seizures based upon this diary does
nothing to change the inconsistencies noted by the ALJ and the
evidence upon which the ALJ's earlier credibility determination
is based. It merely provides one more inconsistency which the
Appeals Council has determined is insufficient to change the
ALJ's decision. Additionally, Dr. dePadua's treatment notes
reveal that plaintiff had two seizures between July 11 and July
15, 2005 while she was in the epilepsy monitoring clinic, yet Dr.
dePadua made no mention that the two seizures occurred on the
same day or that there were a "cluster" of seizures while at the
monitoring unit. (R. 236-37).

-32-

Moreover, as the Commissioner argues, Dr. dePadua stated in her letter "that Plaintiff's 'seizure control over the past year[] has been the best it's ever been.'" (Comm'r Br. 18)(quoting (R. 284).   Plaintiff worked despite seizures in the past.   If as Dr. dePadua stated, plaintiff's seizure control is the best it's ever been, it is better than it was when she was working.   Therefore, the seizures cannot be disabling because plaintiff has performed substantial gainful activity in the past despite her seizures being under worse control than she had at the time in issue here.

Resolving such inconsistencies is for the Commissioner, not the court.   Where, as here, the inconsistencies have been resolved, the Commissioner has explained the resolution of the inconsistencies, and substantial evidence supports that resolution, the court may not impose a contrary determination on the Commissioner.

### C.   Whether Plaintiff's Condition Equals Listing 11.03

Plaintiff claims the ALJ erred in finding her condition does not <u>equal</u> the severity of Listing 11.03.   She argues this is so because although the ALJ found that the condition does not equal Listing 11.03, he did not specifically discuss and explain the basis for this finding in his decision.   She argues that the ALJ should have considered whether the multiple seizures in individual weeks reflected in the "seizure log" are sufficient to

-33-

equal the Listing, and that the Appeals Council should have considered whether Dr. dePadua's letter would establish that plaintiff's condition is sufficient to equal the Listing. Finally, she argues that the regulations require the ALJ to consider the opinion of a medical consultant designated by the Commissioner whether plaintiff's condition equals a Listing, and that the ALJ did not do so. The Commissioner argues that medical equivalence is not a determination whether a condition "almost" meets a Listing, but requires a showing of medical findings that are at least of equal medical significance as the criteria of the Listing. He argues that plaintiff points only to the same evidence used in support of her argument that her condition meets a Listing but does not show any medical findings which are of equal medical significance to the Listing criteria.

The court agrees with the Commissioner. Plaintiff's argument misses the fact that at step three it is her burden to present evidence that her condition involves findings "at least of equal medical significance to those of a listed medical impairment." 20 C.F.R. § 404.1526(b)(3). She may not merely rest on an allegation that the ALJ did not adequately discuss whether her condition equals a Listing. She must point to some evidence in the record which might potentially be of equal medical significance to the findings which are not met. This she does not do. The criterion which precludes a finding plaintiff

meets the Listing is the frequency criterion--more frequently than once weekly.  Plaintiff does not point to record evidence which might be of equal medical significance to this finding.  She merely points to Dr. dePadua's letter and the "seizure log." This is evidence which the court found was properly discounted in finding that plaintiff's condition does not meet the Listing. The medical significance of that evidence cannot be somehow revived merely by suggesting that the evidence might alternatively support a finding that plaintiff's condition equals the Listing.  To the extent plaintiff argues that the ALJ did not even consider the "seizure log," the court considered that argument above and found that the "seizure log" was considered by the ALJ, but discounted to the same extent and for the same reasons he discounted plaintiff's allegations.

The problem with the evidence to which plaintiff alludes is not only that it did not reveal more than one seizure every week. The problem is that the ALJ properly discounted the credibility of the evidence.  Ignoring the evidence properly discounted, the remaining, credible evidence does not demonstrate that plaintiff's condition meets the frequency criterion.  Plaintiff points to no remaining credible record evidence which might be of equal medical significance to the frequency criterion.

Plaintiff's argument that the ALJ failed to secure the opinion of a medical consultant designated by the Commissioner

regarding medical equivalence is simply wrong.  As plaintiff
argues, the regulations require that when determining if a
claimant's impairments medically equal a Listing, the
Commissioner must "consider the opinion given by one or more
medical . . . consultants designated by the Commissioner."  20
C.F.R. § 404.1526(c)(2007).  The regulations provide that the
term "medical consultant designated by the Commissioner"
"includes any medical . . . consultant employed or engaged to
make medical judgments by the Social Security Administration,
. . . or a State agency authorized to make disability
determinations."  Id. § 404.1526(d).  Moreover, in cases such as
this, where a State agency makes the initial and reconsideration
determination, the State agency medical consultant "has the
overall responsibility for determining medical equivalence."  Id.
§ 404.1526(e).  "For cases at the Administrative Law Judge . . .
level, the responsibility for deciding medical equivalence rests
with the Administrative Law Judge."  Id.

     Here, as discussed at page 2 above, the ALJ accorded
significant weight to the assessments and medical opinions of Dr.
Stockwell, "the state agency medical consultant" who assessed the
medical evidence at the initial and reconsideration review of
plaintiff's application.  (R. 26-27)(citing Exs. 5F, 9F (R. 176-
83, 221-28)).  Dr. Stockwell is a medical doctor who was the
State agency medical consultant who performed the Physical RFC

Assessment and signed the "Disability Determination and Transmittal" for both the initial and reconsideration determination. (R. 29, 30, 176-83, 221-28). Thus, in accordance with the regulations, and absent specific contrary evidence or a specific contrary showing, the court assumes the agency followed its regulations and Dr. Stockwell made the medical equivalence determination at step three of the sequential evaluation process during the initial and reconsideration determinations. At the ALJ level, the ALJ made the determination that plaintiff's condition does not equal Listing 11.03. Plaintiff points to no record evidence which she alleges is of equal medical significance to the missing frequency criterion, and Dr. Stockwell's determinations that plaintiff is not disabled constitute medical evidence in support of the ALJ's finding. The requirement of the regulation cited has been fulfilled, and the court finds no error in the step three evaluation.

**V.    Hypothetical Question**

In her final allegation of error, plaintiff claims the ALJ provided an inadequate hypothetical question to the vocational expert (VE) and then erroneously relied upon the VE's response to that hypothetical. The Commissioner argues that the hypothetical question was proper because it included all credible limitations, and the VE testimony based thereon was, therefore, substantial evidence upon which the decision was properly based.

The hypothetical presented to a vocational expert must include all limitations found by the ALJ, but need not include all limitations alleged by plaintiff.  Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000).  The ALJ need only include limitations which he finds supported by substantial evidence in the record.  Davis v. Apfel, 40 F. Supp. 2d 1261, 1269 (D. Kan. 1999).  This is a necessary corollary to the rule that "'[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'"  Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990))).

To the extent plaintiff's argument relies upon the "seizure log" and the credibility of plaintiff's allegations of "extreme degrees of frequency, duration and post-ictal sequela . . . alleged at the hearing or in disability questionnaires of record" (R. 25), it must fail because the ALJ discounted the "seizure log" and plaintiff's allegations.  Therefore, those limitations were properly not included in the hypothetical stated to the VE.

Plaintiff also claims that the RFC hypothetical presented to the VE did not account for seizures lasting thirty to sixty seconds where she experienced loss of consciousness or alteration of awareness followed by postictal symptoms of fatigue and

confusion for about two minutes and generalized headaches lasting for about an hour, or for the fact that she has fallen on four occasions as the result of a seizure.  The court disagrees.  With regard to the fact that plaintiff has fallen on occasion as the result of a seizure, the hypothetical included that the hypothetical individual was limited to sedentary work, "would not be able to climb ladders or scaffolding, could only occasionally climb stairs, [and] would need to avoid all exposure to hazards, such as dangerous machinery or unprotected heights."  (R. 356).  Plaintiff does not explain why these restrictions do not account for the possibility that plaintiff might fall on occasions when she has a seizure.

     With regard to the seizures themselves and the limiting immediate postictal sequela, the ALJ explained, "I'd like for you to assume for me . . . because of the person's disabilities, they would need to take unscheduled breaks during the day in addition to the normal two breaks plus lunch break, but the -- that these breaks would not last more than ten minutes.  And then -- and assume for me, . . . that there would be no more than two of those breaks, additional breaks, per day."  (R. 356)(emphases added).  Such unscheduled ten-minute breaks would accommodate a seizure of the kind reported to Dr. Weinstein and found by the ALJ to be credibly alleged.  The only sequela continuing longer than ten minutes would be fatigue and a generalized headache.

-39-

Beyond the reports discounted by the ALJ, plaintiff points to no record evidence that these remaining symptoms preclude returning to work at the end of ten minutes.  The hypothetical question properly accounted for the limitations found credible by the ALJ, and the ALJ was justified in relying on the VE's response to that hypothetical.  The court finds no error in the decision as alleged by plaintiff.

**IT IS THEREFORE RECOMMENDED** that judgment be entered AFFIRMING the decision of the Commissioner in accordance with the fourth sentence of 42 U.S.C. § 405(g).

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.  Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 30th day of September 2008, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**